OPINION
Appellants-defendants, Mary and Ronald Capps, appeal a Butler County Court of Common Pleas, Juvenile Division, decision to terminate their parental rights and grant permanent custody of their three children, Rodney Capps, age nine; Cecily Capps, age eight; and Ronald Capps, age six, to the Butler County Children Services Board ("BCCSB").[1]
We affirm.
In August of 1987, Rodney, who was almost two weeks old, was removed from appellants' home for failure to thrive. Rodney was found to be neglected and dependent. Rodney was returned to appellants in June 1989, but BCCSB monitored Rodney's development until June 7, 1990. Between 1987 and 1990, appellants were enrolled in programs to improve their parenting skills, housekeeping skills, and money management. However, appellants failed to participate in the programs and showed only marginal improvement. Appellant Rodney Capps admitted that he had a substance abuse problem, but failed to participate in a treatment program. Appellants' case was closed since they claimed they were moving out of the area.
On January 2, 1992, BCCSB received a referral from the Middletown Regional Hospital. Ronald was brought to the hospital because he was suffering from a high temperature, which led to a seizure. The hospital personnel noted that Ronald was dirty all over and smelled of urine. BCCSB monitored the case until June 17, 1992.
On January 31, 1993, the Middletown Police Department found Rodney and Cecily, ages five and four respectively, wandering the streets at 2:55 in the morning. Since the police were unable to locate appellants, BCCSB was contacted and the children were placed in foster care. On February 1, 1993, the children were returned to appellants. On February 2, 1993, a BCCSB worker inspected appellants' home and found it acceptable.
On February 2, 1994, BCCSB received a referral that there was raw sewage running down appellants' kitchen wall. Appellants remedied the situation. However, on April 13, 1994, a BCCSB worker visited appellants' home and found it to be unsuitable. The worker discovered dog feces covering the floor where the children played, dirty dishes in the kitchen, and food in the carpets. The children were placed with their paternal grandmother until appellants could resolve the sanitary problems. On April 15, 1994, the children were returned to appellants, but BCCSB continued to monitor the situation. A case plan was developed, but appellants failed to follow the plan. BCCSB closed their file on appellants in May 1995 when appellants moved to Kentucky with their four children, Rodney, Cecily, Ronald and Orlena.
On May 23, 1995, Orlena was killed by her brother, Ronald, in a tragic shooting accident. On June 29, 1995, the Wolfe County Children Services of Kentucky ("WCCSK") filed a complaint alleging that the children were neglected. However, before WCCSK could proceed, appellants moved back to Middletown, Ohio on July 2, 1995. As a result, WCCSK closed their case on appellants, but sent a referral to BCCSB. BCCSB attempted to visit appellants in October and November 1995, but were unable to locate appellants.
On January 2, 1996, BCCSB received a referral that the children had excessive absences from school and a chronic problem with head lice. On April 3, 1996, a BCCSB worker visited appellants' home and discovered dog feces covering the floors, bare mattresses where the children slept, and holes in the floors, walls, and ceilings. The BCCSB worker concluded that the living conditions posed a threat to the children's health and safety.
On April 4, 1996, the children were placed in foster care and BCCSB filed a complaint alleging that the children were neglected and dependent. In an ex parte emergency hearing, the trial court found that it would be in the best interest of the children to remove them from appellants' custody and place them in the temporary custody of BCCSB.
At an April 9, 1996 shelter care hearing, the magistrate (1) ordered that temporary custody should remain with BCCSB, (2) granted appellants unsupervised visits provided that they were "nit and lice free," and (3) ordered BCCSB to re-inspect appellants' home. On August 12, 1996, BCCSB agreed to withdraw its allegations of neglect as to Rodney and Ronald. In exchange, all parties agreed to a finding of dependency as to Rodney, Ronald, and Cecily, and a finding of neglect as to Cecily. The magistrate accepted the agreement and continued the order of temporary custody to BCCSB. In addition, the magistrate ordered appellants to undergo an evaluation at Children's Diagnostic Center, participate in a development living skills program ("DLA"), granted appellants liberal visitation, and ordered appellant Ronald Capps to undergo an alcohol assessment.
On April 8, 1998, BCCSB filed a complaint seeking permanent custody of the children. On May 15, 1998, May 28, 1998, and July 28, 1998, a hearing was conducted to determine whether appellants' parental rights should be terminated and whether permanent custody should be granted to BCCSB.
By judgment entry filed on October 21, 1998, the magistrate found that the children could not be placed with appellants within a reasonable time and it was in the best interest of the children to place them in the permanent custody of BCCSB. Accordingly, the magistrate ordered that (1) appellants' parental rights as to Ronald and Cecily be terminated, (2) Ronald and Cecily be placed in the permanent custody of BCCSB where they have the likelihood of being adopted, (3) Rodney be placed in long-term foster care of BCCSB since his behavioral problems made it unlikely that he would be adopted, (4) any existing support order regarding Rodney would continue in effect, and (5) there would be an annual review of Rodney's long-term foster care placement. The juvenile court affirmed the magistrate's decision on October 21, 1998.
Appellants filed a timely appeal and assert one assignment of error.
Assignment of Error No. 1:
 THE TRIAL COURT'S DECISION TO GRANT BCCSB PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
In their sole assignment of error, appellants argue that the evidence does not support the trial court's finding that the best interest of the children is served by granting legal and permanent custody to BCCSB. We disagree.
A juvenile court may grant permanent custody to an agency if the court finds by clear and convincing evidence that the best interest of the child warrants a grant of permanent custody, and that the child cannot be placed with either parent within a reasonable time. In re Egbert Children (1994), 99 Ohio App.3d 492,495. Clear and convincing evidence is present when there is evidence to support a firm belief or conviction that a particular fact has been established. In the Matter of Gipson (Sept. 30, 1997), Hardin App. No. 6-97-12, unreported, citing Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In determining the best interest of the child, R.C. 2151.414(D) requires the trial court to consider all relevant factors, including the following:
 interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
The wishes of the child * * *;
The custodial history of the child;
 The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
In addition to determining the child's best interest, the juvenile court is required to assess whether the child can be placed with her parents within a reasonable time or not at all. In making its determination, the juvenile court is guided by a variety of factors listed in R.C. 2151.414(E). The relevant part of R.C. 2151.414(E) states:
 [If] one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially cause the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the [permanent custody] hearing.
In the present case, the juvenile court considered the children's interrelationship with appellants, their foster parents, and with each other. The record reflects that all three children have been exposed to physical discipline by appellant Rodney Capps; sexual activity; and domestic violence between appellants. As a result, all three children have acted out sexually with each other and with other relatives. In particular, Cecily is fearful that Rodney will sexually expose himself to her again. Further, all three children have conveyed their belief that appellants would provide little protection from future sexual exposure.
All three children have exhibited a strong attachment to their foster parents and have demonstrated little hope of returning to appellants. Rodney has had the most difficulty relating to other people, but has a closer bond with his siblings and foster parents than with appellants. Ronald has expressed mixed feelings about returning to appellants. Ronald has indicated that appellants' interaction with him on a proper physical level has been lacking which has left him with feelings of isolation and loneliness. As a result, Ronald has expressed his desire for adoption. Cecily lacks a positive interpersonal relationship with appellants and is ambivalent towards them and her siblings. Although Cecily does not like her current foster home, she has expressed a desire to return to her previous foster parents.
Psychological evaluations revealed that the children, especially Robert, have experienced nightmares and obsessive thought patterns since the death of their sister, Orlena. The evaluator recommended therapy for the children and an environment that will foster emotional support to effectively deal with their loss. Despite this recommendation and the children's behavioral problems, appellants have failed to recognize that the children have special needs. For instance, appellant Mary Capps stated she does not feel that the children need additional help in coping with Orlena's death.
Additionally, the children have had chronic problems with head lice and persistent absences from school. Appellants indicate that they have attempted to deal with the head lice, however, they have been unable to resolve the problem. In addition, appellants did not recognize a connection between the children's absences and their poor school performance. After the children were placed in foster care, their head lice problem was remedied, and their school performance improved. In foster care, the children were instructed as to basic hygiene skills, and for the first time the children learned how to hold a toothbrush, comb their hair, and bathe themselves. Further, the children received the necessary therapeutic treatment to cope with the loss of Orlena. As a result of the treatment, the children have exhibited increased self-confidence.
All three children have expressed a desire to return to appellants. However, Ronald and Cecily have responded positively to adoption and favor adoption if they cannot return to appellants.
The custodial history of the children with BCCSB was a factor considered by the juvenile court. Initial involvement with BCCSB began in August 1987 when Rodney was placed in foster care for failure to thrive. Rodney was again placed in foster care on January 31, 1993 with Cecily when they were found wandering the streets at 2:55 a.m. In 1996, all three children were removed from appellants' care based on allegations of neglect. The children have been in several foster homes since that time. In addition, Rodney has been psychiatrically hospitalized and is in a therapeutic foster home.
The juvenile court determined that the children need to be placed in a legally secure home. The juvenile court considered whether such placement can be achieved with appellants within a reasonable time or whether placement is necessary with BCCSB. The record reflects that the children need to receive adequate medical care, continued hygiene instruction, therapy, and affection. Appellants have failed to provide a clean home, effectively deal with their children's physical and emotional well-being, and to teach their children proper boundaries with each other.
In an effort to improve appellants' parenting skills, they have been offered several parenting programs. The programs offered assistance in home sanitation, money management, substance abuse, food and nutrition. However, the record reflects that appellants continuously missed appointments and failed to actively involve themselves in the programs. For example, appellants only attended eight out of the twenty classes offered. Despite BCCSB's efforts to involve appellants in these programs, there was little improvement in any of these areas, particularly in the sanitation of appellants' home.
Appellant Rodney Capps has admitted that he has a substance abuse problem with alcohol and marijuana, however, appellant Mary Capps denies his addiction problems. Appellant Rodney Capps was referred to several outpatient programs, but was terminated for lack of participation. In fact, he has failed to complete a substance abuse intervention program. Further, the psychological evaluator recommended that appellant Mary Capps needs therapy to deal with her hallucinations. However, she has refused to recognize the problem and has refused treatment.
Despite sporadic participation in these programs, appellants have failed to recognize and incorporate these programs to improve their parenting skills. Appellants testified that they are the "same good parents" with regard to their parenting skills as they were when the children were born. Appellants further stated that they would do very little different if the children were returned to them.
Based on the foregoing, we find that the evidence clearly and convincingly establishes that the juvenile court properly considered the children's best interest, and supports the juvenile court's finding that the children could not be placed with appellants within a reasonable time. Therefore, we find that the juvenile court properly granted BCCSB permanent custody of the Capps children. Accordingly, appellants' sole assignment of error is overruled.
Judgment affirmed.
WALSH and VALEN, JJ., concur.
[1] The ages of the children reflect their ages at the time of their removal.